## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| SHARKDIVER CONSULTING, LLC and STEPHEN VERSKA, | |
| PLAINTIFFS, | CIVIL ACTION NO. |
| v. | **1:22-cv-03889-ELR** |
| GEMINI DIRECT, LLC and STEVE URVAN, | |
| DEFENDANTS. | |

---

## AMENDED ANSWER AND COUNTERCLAIM OF DEFENDANTS GEMINI DIRECT, LLC AND STEVE URVAN

---

COME NOW Defendants Gemini Direct, LLC ("Defendant Gemini") and Steve Urvan ("Defendant Urvan") (collectively referred to as "Defendants"), by and through their undersigned counsel, and pursuant to Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure, hereby file their Amended Answer and Counterclaim to Plaintiffs' Complaint, and show the Court as follows:

### FIRST DEFENSE

Defendants assert that Plaintiffs' Complaint fails to state a claim upon which relief can be granted.

## SECOND DEFENSE

Defendants did not breach any duties that they may have owed to Plaintiffs.

## THIRD DEFENSE

Defendants plead the defense of failure of consideration.

## FOURTH DEFENSE

Defendants plead the defense of duress.

## FIFTH DEFENSE

Defendants plead the defense of fraud.

## SIXTH DEFENSE

Plaintiffs lack standing to assert some or all of the claims asserted in the Complaint against Defendants.

## SEVENTH DEFENSE

To the extent as may be shown applicable by the evidence through discovery, Defendants assert the affirmative defenses of estoppel, illegality, release, and waiver.

## EIGHTH DEFENSE

Defendants reserve the right to plead such other defenses as may become known during the course of investigation and discovery.

## ANSWER

Responding to the specifically numbered paragraphs of Plaintiffs' Complaint,

Defendants answer as follows:

# I. <u>NATURE OF THE ACTION</u>

## 1.

Defendants deny the allegations contained in Paragraph 1 of Plaintiffs' Complaint.

# II. <u>PARTIES</u>

## 2.

Defendants are without sufficient information to formulate a belief as to the truth or falsity of the allegations contained in Paragraph 2 of Plaintiffs' Complaint, and Defendants therefore deny same.

## 3.

Defendants are without sufficient information to formulate a belief as to the truth or falsity of the allegations contained in Paragraph 3 of Plaintiffs' Complaint, and Defendants therefore deny same.

## 4.

Defendants admit the allegations contained in Paragraph 4 of Plaintiffs' Complaint.

## 5.

Defendants admit the allegations contained in Paragraph 5 of Plaintiffs'

Complaint.

## III. <u>JURISDICTION AND VENUE</u>

### 6.

Defendants deny the allegations contained in Paragraph 6 of Plaintiffs' Complaint.

### 7.

Defendants deny the allegations contained in Paragraph 7 of Plaintiffs' Complaint.

### 8.

Defendants are without sufficient information to formulate a belief as to the truth or falsity of the allegations contained in Paragraph 8 of Plaintiffs' Complaint. Specifically, Defendants are without sufficient information regarding the residency and principal place of business of Plaintiffs. Accordingly, Defendants deny the allegations contained in Paragraph 8 of Plaintiffs' Complaint.

## IV. <u>FACTUAL BACKGROUND</u>

### 9.

Defendants are without sufficient information to formulate a belief as to the truth or falsity of the allegations contained in Paragraph 9 of Plaintiffs' Complaint, and Defendants therefore deny same.

10.

Defendants deny the allegations contained in Paragraph 10 of Plaintiffs' Complaint.

11.

Defendants deny the allegations contained in Paragraph 11 of Plaintiffs' Complaint.

12.

Defendants deny the allegations contained in Paragraph 12 of Plaintiffs' Complaint.

13.

Defendants deny the allegations contained in Paragraph 13 of Plaintiffs' Complaint.

14.

Defendants deny the allegations contained in Paragraph 14 of Plaintiffs' Complaint.

15.

In responding to Paragraph 15 of Plaintiffs' Complaint, Defendants state the referenced document speaks for itself and does not require a response. To the extent a response is required, Defendants deny the allegations contained in Paragraph 15 of Plaintiffs' Complaint, including all of its subparts.

16.

In responding to Paragraph 16 of Plaintiffs' Complaint, Defendants state the referenced document speaks for itself and does not require a response. To the extent a response is required, Defendants deny the allegations contained in Paragraph 16 of Plaintiffs' Complaint, including all of its subparts.

17.

In responding to Paragraph 17 of Plaintiffs' Complaint, Defendants state the referenced document speaks for itself and does not require a response. Defendants also state that Paragraph 17 of Plaintiffs' complaint misquotes the agreement attached to Plaintiffs' Complaint as Exhibit A. To the extent a response is required, Defendants deny the allegations contained in Paragraph 17 of Plaintiffs' Complaint, including all of its subparts.

18.

Defendants admit a payment of $1,000,000.00 was made to Plaintiffs as a result of duress and the deceitful actions of Plaintiffs. Defendants deny the rest and remainder of the allegations contained in Paragraph 18 of Plaintiffs' Complaint.

19.

Defendants are without sufficient information to formulate a belief as to the truth or falsity of the allegations contained in Paragraph 19 of Plaintiffs' Complaint, and Defendants therefore deny same.

20.

Defendants deny the allegations contained in Paragraph 20 of Plaintiffs' Complaint, as stated.

21.

Defendants are without sufficient information to formulate a belief as to the truth or falsity of the allegations contained in Paragraph 21 of Plaintiffs' Complaint, and Defendants therefore deny same.

22.

Defendants are without sufficient information to formulate a belief as to the truth or falsity of the allegations contained in Paragraph 22 of Plaintiffs' Complaint, and Defendants therefore deny same.

23.

Defendants deny the allegations contained in Paragraph 23 of Plaintiffs' Complaint.

## V. COUNTS

### FIRST CLAIM FOR RELIEF
**BREACH OF CONTRACT**

24.

To the extent that Paragraph 24 of Plaintiffs' Complaint requires a response, Defendants incorporate by reference and restate as if in full their responses made in

the above Paragraphs and all of their Defenses.

25.

Defendants deny the allegations contained in Paragraph 25 of Plaintiffs' Complaint.

26.

Defendants deny the allegations contained in Paragraph 26 of Plaintiffs' Complaint.

27.

Defendants deny the allegations contained in Paragraph 27 of Plaintiffs' Complaint.

28.

Defendants deny the allegations contained in Paragraph 28 of Plaintiffs' Complaint.

29.

Defendants deny the allegations contained in Paragraph 29 of Plaintiffs' Complaint.

30.

Defendants deny the allegations contained in Paragraph 30 of Plaintiffs' Complaint.

31.

Defendants deny the allegations contained in Paragraph 31 of Plaintiffs' Complaint.

32.

Defendants deny the allegations contained in Paragraph 32 of Plaintiffs' Complaint.

33.

Defendants deny the allegations contained in Paragraph 33 of Plaintiffs' Complaint.

34.

Defendants deny the allegations contained in Paragraph 34 of Plaintiffs' Complaint.

## SECOND CLAIM FOR RELIEF
## ATTORNEYS' FEES AND EXPENSES

35.

To the extent that Paragraph 35 of Plaintiffs' Complaint requires a response, Defendants incorporate by reference and restate as if in full their responses made in the above Paragraphs and all of their Defenses

36.

Defendants deny the allegations contained in Paragraph 36 of Plaintiffs' Complaint.

37.

Defendants deny the allegations contained in Paragraph 37 of Plaintiffs' Complaint.

Defendants deny any and all allegations contained in Plaintiffs' Complaint which have not been expressly admitted or denied herein.

Defendants deny that Plaintiffs are entitled to any of the relief requested in the PRAYER FOR RELIEF and WHEREFORE paragraphs contained in Plaintiffs' Complaint.

## COUNTERCLAIM

COME NOW Defendants and Counterclaim Plaintiffs Gemini Direct, LLC ("Gemini") and Steve Urvan ("Urvan") (either hereinafter referred to singularly as "Defendant," and collectively as "Defendants") pursuant to Rule 13 and Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure, and without waiving and specifically reserving the Affirmative Defenses described in their Answer, above, file their Counterclaim against Plaintiffs, respectfully showing the Court as follows:

### Jurisdiction and Venue

1.	This Court has subject matter jurisdiction over all claims pursuant to 28 U.S.C. § 1332; this is a civil action between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

2.    Proceedings before this Court are proper pursuant to 28 U.S.C. § 1391(b)(2).

**The Parties**

3.    Defendant Gemini is a limited liability company organized under the laws of the State of Nevada, whose sole member, Urvan, is a resident of the State of Florida.

4.    Defendant Urvan is an individual resident of the State of Florida.

5.    Upon information and belief, Plaintiff and Counterclaim Defendant SharkDiver Consulting, LLC ("SharkDiver"), is a non-existent entity.

6.    Upon information and belief, Plaintiff and Counterclaim Defendant Stephen Verska ("Verska") is an individual resident of the State of Georgia. SharkDiver and Verska hereinafter referred to singularly as "Plaintiff," and collectively as "Plaintiffs."

**Facts**

7.    Defendant Urvan started GunBroker.com in 1999 and, over the course of the next two decades, grew it from nothing to one of the top online marketplaces of its kind.

8.    Defendant Urvan also founded, funded, and developed a group of technology-related and online entities (the "Urvan Entities").

9. Defendant Urvan owned, as sole or majority owner, all of the Urvan Entities.

10. Among the Urvan Entities was IA Tech, LLC, a parent company that held GunBroker.com ("IA Tech") and Cloud Catalyst, LLC ("Cloud Catalyst").

11. IA Tech and Cloud Catalyst were among several Urvan Entities related to GunBroker.com ("GB Entities").

12. In 2015, Defendant Urvan hired Plaintiff Verska as Chief Technology Officer ("CTO") of IA Tech and Chief Executive officer ("CEO") of Cloud Catalyst, putting him in charge of technology initiatives, development of technology, team-building, and technology strategy for the GB Entities.

13. In his role as CTO of IA Tech, Plaintiff Verska worked across many Urvan Entities, including non-GB Entities, typically serving as CTO.

14. Plaintiff Verska served as an officer and director of TVP Investments, LLC, one of the larger non-GB Entities, and its subsidiaries ("TVPI").

15. A W-2 employee, Plaintiff Verska received a salary of $250,000 per year as compensation, plus a $50,000 annual bonus, plus discretionary bonuses for his roles in the Urvan Entities.

16. As an officer, director, and key employee of many Urvan Entities, Plaintiff Verska was in a position to learn, develop, and hold trade secrets, sensitive business-related information, and other confidential business information.

17.     Plaintiff Verska was not a party to any deferred compensation or phantom equity agreement with Defendant Urvan or any of the Urvan Entities.

18.     Plaintiff Verska's wife, Kim Verska ("Ms. Verska"), is an attorney licensed to practice law in the State of Georgia with a concentration on corporate and technology transactions.

19.     Even before her marriage to Plaintiff Verska, Ms. Verska served as outside general counsel for Defendant Urvan and the Urvan Entities for years, such representation completely ending in June 2022 following the acquisition of the GB Entities, a subset of the Urvan Entities.

20.     As counsel for Defendant Urvan and the Urvan Entities, Ms. Verska had a fiduciary relationship with Defendant Urvan and the Urvan Entities.

21.     For a time, Ms. Verska also served as secretary of TVPI and many of its subsidiaries.

22.     In or around 2018, Defendant Urvan, TVPI, IA Tech, and Cloud Catalyst became embroiled in litigation regarding a late-stage claim of equity in those Urvan Entities by a third party in the absence of an agreement, following a corporate restructuring plan ("Equity Litigation").

23.     Ms. Verska, as outside general counsel for the Urvan Entities, oversaw the corporate restructure, negotiated with the parties who eventually made the claim

of equity in the Urvan Entities, and then participated in the defense of the Urvan Entities in the Equity Litigation.

24. In or around January 2021, Defendant Urvan entered into negotiations with a third party ("Acquirer") for the acquisition of the GB Entities (the "Merger").

25. As part of the Merger, Defendants arranged to satisfy an approximately $50 million balance on a loan (the "Loan").

26. The Loan agreement contained a mandatory provision that required 30 days' advance notice to the bank of the intent to pre-pay the Loan, after which, if no payment were received, the Loan would be in default ("Default Date").

27. The Default Date for the Loan was May 1, 2021.

28. Without the Merger, Defendants would not have the cash to make the full $50 million pre-payment by the Default Date and would have defaulted on the Loan

29. The Loan was not in default and Defendants were current with their payments in the time leading up to the Merger.

30. Plaintiff Verska, as a key employee, director, and officer of the GB Entities, was in a position to know the evolution and timeline of business operations and opportunities for the Urvan Entities, including the Merger and the Loan satisfaction.

31.    Plaintiff Verska participated in due diligence related to the Merger on behalf of the Urvan Entities.

32.    The continued participation of Defendant Urvan and Plaintiff Verska in the operation of GunBroker.com was specifically negotiated as part of the Merger.

33.    The Merger negotiations also specifically allowed Plaintiff Verska to continue to work for Defendant Urvan and the non-GB Entities that were not acquired.

34.    Plaintiff Verska and Defendant Urvan had to resign from the GB Entities and Urvan Entities for the purposes of being rehired by the Acquirer, following the Merger.

35.    Plaintiff Verska continued to work for the GB Entities under the Acquirer after the Merger.

36.    Plaintiff Verska continued to work for the non-acquired Urvan Entities through and after the Merger.

37.    Plaintiff SharkDiver had no relationship, business or otherwise, with Defendant Urvan, Defendant Gemini, or any of the Urvan Entities.

38.    The Georgia Secretary of State shows no issuance of Article of Organization of a domestic entity called "SharkDiver Consulting, LLC" or registration of a foreign entity called "SharkDiver Consulting, LLC."

39.     A corporation called "SharkDiver Consulting, Inc." is registered with the Georgia Secretary of State, with Plaintiff Verska listed as CEO and CFO and Ms. Verska listed as Secretary ("Verska Corp.").

40.     Ms. Verska, a specialist in corporate law and corporate transactions, the incorporator of Verska Corp., and the authorizer of the Articles of Incorporation.

41.     Neither Plaintiff Verska, nor Plaintiff SharkDiver, nor Verska Corp., nor Ms. Verska had any equity interest in the Urvan Entities or entitlement to the proceeds of the Merger.

42.     Neither Plaintiff Verska, nor Plaintiff SharkDiver, nor Verska Corp., nor Ms. Verska ever made or threatened to make any claim of equity interest in any of the Urvan Entities to Defendant Urvan before April 29, 2021.

43.     Neither Plaintiff Verska, nor Plaintiff SharkDiver, nor Verska Corp., nor Ms. Verska ever requested, negotiated, or expressed a desire for a severance agreement to Defendant Urvan before April 29, 2021.

44.     Neither Plaintiff Verska, nor Plaintiff SharkDiver, nor Verska Corp., nor Ms. Verska made any claim of entitlement to proceeds from any sale of any of the Urvan Entities prior to April 29, 2021.

45.     The closing date of the Merger was April 30, 2021.

46.     On April 29, 2021, hours before closing, Plaintiff Verska threatened to go to the Acquirer and assert a claim of 10% ownership in the GB Entities, thus derailing the Merger, unless Defendants paid Plaintiffs a portion of the sale proceeds.

47.     Plaintiffs knew that derailing the Merger would also cause Defendants to default on the arrangements to satisfy the Loan from the sale proceeds as part of the Merger.

48.     Also on April 29, 2021, counsel for Plaintiffs delivered to unrepresented Defendants the Severance and Release Agreement, purporting to release Defendants from all claims by Plaintiff SharkDiver (the "Release"). Plaintiffs' Complaint, September 27, 2022, Exhibit A [Doc. 1-1].

49.     Faced with signing the Release or having Plaintiffs delay or destroy the Merger months in the making, affecting multiple entities, and thus defaulting on the Loan, Defendants executed the Release.

50.     The Release required Defendants to make three payments of $1 million each to Plaintiff SharkDiver the first of which was due May 7, 2021, just one week after the Merger closing date.

51.     Plaintiff Verska did not execute the Release.

52.     Plaintiff Verska was removed from all positions with Defendant Urvan and the non-acquired Urvan Entities in mid-2022 when Defendant Urvan learned

that Plaintiff Verska was disclosing confidential business information and sharing non-acquired Urvan Entities' technology to Acquirer.

53.  Plaintiff Verska continued to work for Acquirer until his employment was terminated for cause.

## COUNT I – DECLARATORY JUDGMENT

54.  Defendants restate and reallege paragraphs "1" through "53" of this Counterclaim with the same force and effect as if fully set forth herein.

55.  Plaintiff SharkDiver is a non-existent entity.

56.  Plaintiff Verska knew Plaintiff SharkDiver was a non-existent entity at the time the purported Release was signed.

57.  Plaintiff Verska executed the purported Release as President of non-existent entity Plaintiff SharkDiver, but Plaintiff Verska, individually, did not.

58.  Plaintiff Verska had no authority to execute the purported Release on behalf of a non-existent entity.

59.  Plainitff SharkDiver, as a non-existent entity, had no authority to enter into the purported Release.

60.  Defendants' uncertainty as to the authority of non-existent entity SharkDiver, LLC's right to enter into the purported Release can only be resolved by decree of this Court.

61.     Defendants are entitled to a declaration that the purported Release was not executed by a proper party and is of no force and effect.

## COUNT II – UNJUST ENRICHMENT

62.     Defendants restate and reallege paragraphs "1" through "61" of this Counterclaim with the same force and effect as if fully set forth herein.

63.     Plaintiffs received $1 million under the purported Release.

64.     Upon a declaration that the purported Release is of no force and effect, Plaintiffs will have received a benefit of $1 million on the basis of a contract that was void ab initio.

65.     Equity demands that Plaintiffs disgorge the $1 million payment received under the purported Release.

## COUNT III - ECONOMIC DURESS

66.     Defendants restate and reallege paragraphs "1" through "65" of this Counterclaim with the same force and effect as if fully set forth herein.

67.     Plaintiff Verska's threat to go to the Acquirer and assert a claim of equity in the GB Entities that he knew he did not have was made in bad faith for the purpose of extorting a payment.

68.     Plaintiff Verska knew he had no equity agreement, no severance agreement, and no agreement to share in sale proceeds with Defendants, so any

dispute with Defendants regarding entitlement to any of those things was asserted in bad faith for the purpose of extorting $3 million by means of the purported Release.

69.     Plaintiff SharkDiver had no relationship at all with Defendants, so any alleged entitlement to or dispute with Defendants regarding entitlement to severance of compensation of any kind was asserted in bad faith.

70.     Plaintiffs created an untenable situation for Defendants by threatening to go to Acquirer and make a claim of equity ownership ("Equity Claim") on April 29, 2021, just hours before the April 30, 2021 closing of the Merger.

71.     Plaintiffs knew that taking the Equity Claim to the Acquirer would cause the Merger to be delayed or fail.

72.     Failure of the Merger would cause Defendants severe economic stress because of the negative economic and business impact on multiple entities, the inability of Defendants to meet obligations under the Merger agreement, and the default on the Loan, set to be satisfied at the close of the Merger.

73.     Plaintiffs took advantage of the untenable situation they created through the threat of the unfounded Equity Claim by offering to enter into an agreement to resolve an alleged dispute regarding compensation to Plaintiff SharkDiver in exchange for $3 million, just hours before the Merger was due to close.

74.     With only hours before the close of the Merger, Defendants had no choice but to sign the Release or face the catastrophe of the failed Merger and the Loan default.

75.     Defendant Urvan made the first payment of $1 million during a time when the Merger was still engaged in post-close activities and susceptible to failure.

76.     Plaintiffs took advantage of the untenable situation they created for Defendants through the eleventh-hour bad faith Equity Claim by extorting $3 million from Defendants under the guise of the purported Release, ultimately causing Defendants to suffer the loss of $1 million plus, the unnecessary expense and aggravation of litigation.

## COUNT IV – BREACH OF FIDUCIARY DUTY

77.     Defendants restate and reallege paragraphs "1" through "76" of this Counterclaim with the same force and effect as if fully set forth herein.

78.     As an officer, director, and spouse of a fiduciary of Urvan Entities, including the non-GB Entities that were not acquired in the Merger, Plaintiff Verska had a confidential, insider relationship with Defendants that resulted in a fiduciary duty.

79.     Plaintiff Verska breached his fiduciary duty, including good faith, to Defendants by leveraging his confidential relationship and knowledge of the Urvan Entities and the pending Merger to purposefully endanger the Merger for his own

personal gain in an attempt to procure a payment of millions of dollars of Defendants' money to the detriment of Defendants.

80. Plaintiff Verska further breached his fiduciary duties to Defendants by leveraging his confidential relationship and knowledge of the non-acquired Urvan Entities by disclosing confidential and sensitive business information and proprietary technology to an outside entity to the detriment of Defendants.

81. As a result of Plaintiff Verska's breach of fiduciary duty, Defendants suffered the loss of $1 million, plus the unnecessary expense and aggravation of litigation.

82. As a further result of Plaintiff Verska's breach of fiduciary duty, Defendants suffered the loss of proprietary technology, processes, operations, and intellectual property.

## COUNT V - FRAUDULENT MISREPRESENTATION

83. Defendants restate and reallege paragraphs "1" through "82" of this Counterclaim with the same force and effect as if fully set forth herein.

84. Plaintiffs knew that Plaintiff SharkDiver was not a legitimate entity when they presented the purported Release to Defendants.

85. Plaintiffs knew that Plaintiff SharkDiver had no entitlement to severance or any other compensation or benefit from Defendants.

86.     Plaintiffs knew that Plaintiff SharkDiver, as a non-existent entity with no relationship to Defendants, had no dispute or claims against Defendants to resolve or release.

87.     Plaintiffs purposefully misrepresented to Defendants that Plaintiff SharkDiver was a legitimate entity to which Plaintiff Verska's employment with Defendants could be attributed, that a release from Plaintiff SharkDiver was the same as a release from Plaintiff Verska, and that Plaintiff SharkDiver had claims against Defendants that could be resolved by the Release (the "Misrepresentations").

88.     Plaintiffs made the Misrepresentations to induce Defendants to sign the Release and make payments thereunder.

89.     The Misrepresentations were false at the time they were made by Plaintiffs.

90.     Defendants reasonably relied on Plaintiffs' misrepresentations because Plaintiff Verska's wife, is a corporate law specialist, fiduciary of the Urvan Entities, and served as Defendants' outside counsel for years.

91.     Additionally, the Misrepresentations were first made at the time the Release was presented to Defendants.

92.     Plaintiffs' presentation of the Release for execution for the first time just hours before the Merger gave Defendants no time for negotiation or investigation.

93.     In fact, Plaintiff Verska did not release any claims against Defendants because he was not a party to the Release.

94.     As a result of Plaintiffs' fraudulent misrepresentation, Defendants executed the Release and made the first $1 million payment to Plaintiffs.

## COUNT VI – ATTORNEYS' FEES AND COST OF LITIGATION

95.     Defendants restate and reallege paragraphs "1" through "94" of this Counterclaim with the same force and effect as if fully set forth herein.

96.     Plaintiffs' wrongful actions against Defendants were undertaken in bad faith, have put Defendants to unnecessary trouble and expense and thereby entitle Defendants to awards of attorneys' fees and litigation expenses pursuant to O.C.G.A. §§ 9-15-14 and 13-6-11.

## COUNT VII – PUNITIVE DAMAGES

97.     Defendants restate and reallege paragraphs "1" through "96" of this Counterclaim with the same force and effect as if fully set forth herein.

98.     Plaintiffs' actions with respect to Defendants were fraudulent, willful, and malicious, thereby entitling Defendants to an award of punitive damages pursuant to O.C.G.A. § 51-12-5.1.

WHEREFORE, Defendants and Counterclaim Plaintiffs Gemini and Urvan respectfully request that this Court grant them judgment and order the following relief:

(A)    The entry of a judgment declaring the purported Release invalid and unenforceable and the return of the $1 million paid thereunder;

(B)    That Plaintiff's Complaint be dismissed with prejudice, with all costs and attorneys' fees charged to Plaintiffs;

(C)    That this Court deny Plaintiffs' demand for damages and judgment in its entirety;

(D)    A Judgment in favor of Defendants and against Plaintiffs on all Counts;

(E)    An award of damages in favor of Defendants and against Plaintiffs in the amount of $1,000,000.00;

(F)    An award of compensatory damages and punitive damages in an amount to be determined by the enlightened conscience of the jury;

(G)    An award of prejudgment interest from the date of Plaintiffs' bad faith inducement of the Severance and Release Agreement;

(H)    An award or awards of reasonable attorneys' fees and the costs for this litigation;

(I)    That Defendants be granted a trial by a jury; and

(J) Such other further relief as this Court deems just and proper.

Respectfully submitted this 14th day of February 2023.

O'DANIEL McDONALD, LLC

/s/ Graham E. McDonald
Graham E. McDonald
Georgia Bar No. 843090
Matthew R. Johnson
Georgia Bar No. 940675
Amy R. Harmon
Georgia Bar No. 270955
9040 Roswell Road, Suite 500
Atlanta, GA 30350-3939
(404) 419-6300
(404) 419-6301 (fax)
gmcdonald@odmclaw.com
mjohnson@odmclaw.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned attorney does hereby certify that a true and correct copy of AMENDED ANSWER AND COUNTERCLAIM OF DEFENDANTS GEMINI DIRECT, LLC AND STEVE URVAN was duly served upon all Registered Users via CM/ECF, which will provide notice to the following counsel of record:

F. Skip Sugarman
Kevin Stone
Sugarman Law LLP
154 Krog Street, Suite 190
Atlanta, GA 30307
skip@sugarman-law.com
kevin@sugarman-law.com

*Attorneys for Plaintiffs*

This 14th day of February 2023.

/s/Graham E. McDonald
Graham E. McDonald

9040 Roswell Road, Suite 500
Atlanta, GA 30350
(404) 419-6300
(404) 419-6301 (fax)
gmcdonald@odmclaw.com